25794. ESTRIDGE *v.* HANNA *et al.*

DECIDED DECEMBER 5, 1936.

*Clifford E. Hay, Jesse J. Gainey,* for plaintiff.
*Lee W. Branch, H. H. Merry, Ira Carlisle,* for defendants.

STEPHENS, J. Mrs. Edna Estridge brought suit in the city court of Thomasville, against K. C. Hawthorne of Grady County and L. S. Crosby and H. M. Hanna of Thomas County. The plaintiff alleged that she was the widow of W. H. Estridge, who died on March 22, 1935, as the result of gunshot wounds inflicted by Hawthorne; that for several months before that date Hawthorne was employed by Hanna as a special game warden on Hanna's plantation, and Crosby was employed by Hanna as superintendent and manager of the plantation, with supervision over Hawthorne and other employees on the plantation; that the duties of Hawthorne, among other things, were to protect and preserve such wild game

as existed on the place and such wild game as ranged over parts of said place from adjoining places, particularly wild turkeys, quail, and deer, to keep off poachers and trespassers, and generally to follow the instructions of Crosby; that Hawthorne, on March 22, 1935, in the prosecution and within the scope of his business and employment as special game warden, wilfully and unlawfully killed Estridge by shooting him in the body with a pistol; that Hawthorne was and long had been of a dangerous and bloodthirsty nature and disposition, which fact was well known to Hanna and to his alter ego, Crosby; that Hawthorne had continuously gone about armed with a deadly gun, and had frequently threatened to kill people found passing over parts of the Hanna place and on parts of adjoining places, had frequently drawn his gun and pointed it at other people, in anger and in connection with such threats to kill, and had frequently arrested, and attempted to arrest, people found hunting on lands near the Hanna place, without any warrant or other lawful authority so to do, drawing his gun and threatening to shoot them unless they submitted to such unlawful arrests by him, all of which facts were well known to Hanna and to Crosby; that since the killing of Estridge, and with knowledge thereof, Hanna and Crosby have kept and still keep Hawthorne employed as special game warden on the plantation, which in law and in fact amounts to a ratification by the other defendants of Hawthorne's previous conduct; that on March 22, 1935, Hawthorne did not hold any commission as a public officer of any kind, but at the inquest held over the body of Estridge the defendants falsely claimed and represented to the coroner's jury and the public that Hawthorne was at that time a lawfully-commissioned game warden, in an effort to protect and shield him from the consequences of his prior unlawful conduct; that the place where Estridge was killed was not on land of Hanna, but was on land of P. H. Ward, on which the deceased had a right to be, he having wood cut there; that as he was returning from the Brinson place to the Ward place, Hawthorne, hidden in the woods on the Hanna place, saw Estridge on the land between the Hanna and Ward places, walking beside the Ward fence, and saw that he had with him a shotgun and a turkey, but did not know how it had come into the possession of Estridge or whether it was a wild or domestic turkey; that Hawthorne saw Estridge cross the

Ward fence and start toward his wood-cutting work on the Ward place, and Hawthorne left his place of hiding, crossed the land over onto the Ward place, intercepted Estridge, and shot him to death without justification or excuse; that Hawthorne so killed Estridge to protect the wild game on the Hanna place, shooting from ambush in so doing, all of which was in keeping with his bloodthirsty character and the nature of his employment; and that previously, on the last day of the preceding open season for shooting deer, Hawthorne, seeing Estridge on a deer hunt with others, threatened to kill him, as he later did.

Hanna and Crosby filed general and special demurrers. Hawthorne also demurred. The plaintiff filed two amendments, giving particulars which had been called for by special demurrers. These allegations are not now material. The demurrers were renewed. The court sustained the general demurrers and dismissed the action. The plaintiff excepted and assigned error on the court's rulings.

■ It is settled that the master is not liable when the act of the servant is done purely from personal spite or malice, and has no connection with the business about which he is employed. In the present case it can not be held as a matter of law that the petition shows that the homicide was due to bad feeling between the assailant and the assailed, or that it was disconnected from the employment in which the special game warden was engaged. It could be inferred from the nature of the employment that it was contemplated that the warden would carry a deadly weapon. The petition alleged that Hanna and Crosby both knew that Hawthorne went about armed with a pistol, and had threatened persons with it on various occasions connected with his employment. It is also inferable from the petition that the game warden may have conceived, from seeing the turkey in Estridge's possession, that Estridge was a poacher, and the warden would punish him therefor.

■ It is alleged in the petition that Hawthorne was of a bloodthirsty and dangerous disposition, that he had continuously gone about armed with a pistol, had frequently threatened to kill people found on the Hanna place and adjoining places, had frequently drawn his gun and pointed it at other people in anger, and had frequently, without a warrant, arrested people found hunting on

lands near the Hanna place, etc.; and that these facts were and long had been well known to both Hanna and Crosby. It is insisted by the plaintiff that these facts show that the other defendants did not use ordinary care in selecting and retaining Hawthorne for service as a game warden. Code, § 66-301. As the occupation was one involving danger to human life, the employer should use discretion in the selection of the servant, and should select a servant who would use discretion in the execution of such duties.

It is insisted by the plaintiff that the false representation by Hanna and Crosby, at the coroner's inquest, that Hawthorne was a lawfully-commissioned game warden, and his being thereafter continued in the employment, amounted to a ratification of his tort, rendering them liable to the plaintiff. Ratification is a question of intention, which should be referred to a jury when there is in the petition a clear allegation of facts tending to support that allegation. See *White* v. *Levi*, 137 *Ga.* 269 (3) (73 S. E. 376). The petition as amended set out a cause of action against all the defendants, and the court erred in sustaining the demurrers and dismissing the action.

*Judgment reversed. Sutton, J., concurs.*

JENKINS, P. J. I concur in the judgment, on the principle embodied in the second headnote.